IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE:<br><br>CURTIS L. TURNER and BRENDA A. TURNER,<br><br>Debtors. | Filed / Docketed<br>December 20, 2006<br><br>Case No. 05-20610-M<br>Chapter 7 |
| RICHARD C. BAILEY,<br><br>Plaintiff,<br><br>v.<br><br>CURTIS L. TURNER,<br><br>Defendant. | Adv. Proc. No. 06-01089-M |

## MEMORANDUM OPINION

Presently at issue before the Court is the discharge of approximately $1 million in debt owed by Curtis L. Turner ("Turner") to Richard C. Bailey ("Bailey"). The case is one involving the failed sale of a business. Boiled to its essence, what we have here is the tale of two financial statements, both given to Bailey by Turner at roughly the same time. One statement shows the business at issue to be worth almost $3.5 million. The second statement shows the business to have an even greater *negative* net worth. The question is one of reasonable reliance. Turner claims that Bailey could not have reasonably relied upon the rosy financial statement when he had in his hand the statement showing dire financial distress. Bailey, not surprisingly, disagrees. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Civil Procedure 52, made applicable to this bankruptcy proceeding by Federal Rule of Bankruptcy Procedure 7052.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[1]  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I).

## Summary Judgment Standard

Presently before the Court is the motion for summary judgment filed by Turner.  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2]  "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party."[3]  It is well established that

> [i]n reviewing a summary judgment motion, the court is to view the record in the light most favorable to the nonmoving party.  The purpose of a summary judgment motion, unlike that of a motion to dismiss, is to determine whether there is evidence to support a party's factual claims.  Unsupported conclusory allegations thus do not create a genuine issue of fact.  To withstand summary judgment, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial.[4]

---

[1] Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

[2] Fed. R. Civ. P. 56(c), made applicable to this proceeding by Fed. R. Bank. P. 7056.

[3] *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under The Federal Rules: Defining Genuine Issues of Material Fact,* 99 F.R.D. 465, 487-88 (1984)).

[4] *Kojima v. Grandote Int'l Limited Liab. Co. (In re Grandote Country Club Co.),* 252 F.3d 1146, 1149-50 (10th Cir. 2001) (internal quotes and citations omitted).

Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."[5]

## Burden of Proof

Exceptions to discharge are to be narrowly construed in favor of the debtor so as to promote the "fresh start" policy of the Bankruptcy Code.[6] Under § 523, a creditor seeking to except its claim from discharge must prove the claim is nondischargeable by a preponderance of the evidence.[7]

## Findings of Fact

Bailey was the owner and operator of Tulsa Steel, a steel fabrication business, from 1972 until March 1, 1999. On March 1, 1999, Bailey agreed to sell his interest in Tulsa Steel to Turner. The transaction was structured as a purchase by Turner of the stock of Tulsa Steel, all of which was owned by Bailey. To that end, the parties executed a stock purchase agreement.[8] As part of the agreement, Bailey entered into an employment agreement with Tulsa Steel, which provided Bailey with a source of income and health insurance.[9] In addition, Turner executed and delivered to Bailey a promissory note in the principal amount of $1,200,000.[10] Turner pledged the stock of Tulsa Steel as collateral for the note, and Turner's wife guaranteed the debt. As a part of the purchase agreement, Turner agreed to provide Bailey with personal financial statements of Turner and his

---

[5] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (citations and footnotes omitted).

[6] *See Jones v. Jones (In re Jones),* 9 F.3d 878, 880 (10th Cir. 1993).

[7] *See Grogan v. Garner,* 498 U.S. 279, 287 (1991).

[8] *Turner Exhibits D and D-1.*

[9] *Turner Exhibit E.*

[10] *Turner Exhibit C.*

wife, as well as financial statements for Tulsa Steel, on a semi-annual basis. By agreement of the parties, and pursuant to the stock purchase agreement, the amount of the note was adjusted in April of 2001 to $1,025,674.[11]

After April of 2001, Bailey and Turner had disputes regarding the sale. Litigation ensued. In November of 2002, the parties entered into a settlement agreement. Under the terms of that agreement, Turner executed two new promissory notes in favor of Bailey, each in the amount of $490,820.[12] In addition, Turner extended the term of the employment agreement between Tulsa Steel and Bailey.

On February 25, 2002, Turner provided Bailey with a personal financial statement for Turner and his wife, as well as a financial statement for Tulsa Steel, both for the calendar year ending December 31, 2001.[13] In this personal financial statement, Turner valued his interest in Tulsa Steel at $3,480,000. The balance sheet for Tulsa Steel reflected assets of $1,456,388.73, liabilities of $5,262,539.85, and total capital (or a net worth) of negative $3,806,151.12. The balance sheet of Tulsa Steel reflected net income of $518,869.91 for calendar year 2001. These financial statements were received by Bailey prior to the execution of the November 2002, settlement agreement and promissory notes.

On August 22, 2002, Turner provided Bailey with a personal financial statement for Turner

---

[11] *Turner Exhibit F.*

[12] There is a bit of a discrepancy in the record regarding this number. In the motion for summary judgment and response, Bailey and Turner have agreed that the amount of each note is $490,820. However, other evidence submitted to the Court shows that each note was in the amount of $490,82<u>6</u>. *See, e.g., Turner Exhibit G* at 16, 20 and 23. The six dollar variance has no effect upon the Court's decision.

[13] *Turner Exhibits I and J.*

and his wife, as well as a financial statement for Tulsa Steel, both with an effective date of June 30, 2002.[14] In the personal financial statement, Turner again valued his interest in Tulsa Steel at $3,480,000.  With respect to Tulsa Steel, the balance sheet listed assets of $2,665,096.46, liabilities of $6,168,837.55, and total capital (or a net worth) of negative $3,503,741.09.  Net income for Tulsa Steel during the first six months of 2002 was shown as $302,410.03.

On October 16, 2005, Turner and his wife filed a joint petition for relief under Chapter 7 of the United States Bankruptcy Code.  Bailey filed this adversary proceeding on January 17, 2006, seeking to have the debt owed Bailey declared nondischargeable under § 523(a)(2)(B).  On November 14, 2006, Turner filed his motion for summary judgment.  The matter is now ripe for consideration.

To the extent the "Conclusions of Law" contain any items which should more appropriately be considered "Findings of Fact," such items are incorporated herein by this reference.

## Conclusions of Law

Bailey contends that the obligations owed to him by Turner are nondischargeable under § 523(a)(2)(B). That section excepts from discharge any debt

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–
>
> * * *
>
> (B) use of a statement in writing--
>
> (I) that is materially false;
>
> (ii) respecting the debtor's or an insider's financial condition;

---

[14] *Turner Exhibits K and L.*

>  (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>
> (iv) that the debtor caused to be made or published with intent to deceive; . . . [15]

Bailey must establish each of these elements by a preponderance of the evidence.[16]

Bailey contends that he will be able to show at trial that:

1. Turner obtained the November 1, 2002, settlement and refinancing on the basis of the June 30, 2002, personal financial statement;

2. The valuation of Tulsa Steel contained in that statement was materially false;

3. Said valuation related to the personal financial condition of Turner;

4. Bailey relied upon the valuation of Tulsa Steel contained in the June 30, 2002, personal financial statement; and

5. Turner delivered the June 30, 2002, personal financial statement to Bailey with the intent to deceive Bailey.[17]

In his motion for summary judgment, Turner challenges only one of the required elements: that Bailey reasonably relied upon the valuation of Turner Steel contained in the June 30, 2002, personal financial statement. In light of this argument, the Court will not at this time consider any of the

---

[15] § 523(a)(2)(B).

[16] *Ins. Co. of N. Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1113-1114 (3rd Cir. 1995) (citing *Grogan v. Garner*, 498 U.S. 279, 286-287 (1991)) (hereafter "*Cohn*"); *see also Reeds v. Marx (In re Reeds)*, 145 B.R. 703, 706 (Bankr. N.D. Okla. 1992).

[17] *See Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support, Docket No. 17*, at 2–3; *as modified by Correction to Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support, Docket No. 18*.

other elements of § 523(a)(2)(B).[18]

This Court has previously adopted the test for reasonable reliance under § 523(a)(2)(B) set forth by the United States Court of Appeals for the Third Circuit in *Cohn*:

> The reasonableness of a creditor's reliance under § 523(a)(2)(B) is judged by an objective standard, i.e., that degree of care which would be exercised by a reasonably cautious person in the same business transaction under similar circumstances.
>
> A determination of reasonable reliance requires consideration of three factors: (1) the creditor's standard practices in evaluating credit-worthiness (absent other factors, there is reasonable reliance where the creditor follows its normal business practices); (2) the standards or customs of the creditor's industry in evaluating credit-worthiness (what is considered a commercially reasonable investigation of the information supplied by debtor); and (3) the surrounding circumstances existing at the time of the debtor's application for credit (whether there existed a "red flag" that would have alerted an ordinarily prudent lender to the possibility that the information is inaccurate, whether there existed previous business dealings that gave rise to a relationship of trust, or whether even minimal investigation would have revealed the inaccuracy of the debtor's representations).[19]

This test has been adopted by a significant number of other courts.[20] Even more courts have noted that the existence of a "red flag" which would put a reasonably prudent person on notice that the information contained in the financial statement may not be accurate is a key factor in the reasonable

---

[18] This should not be considered the equivalent of a finding by the Court that the other elements under § 523(a)(2)(B) have been established. Those issues are not presently before the Court.

[19] *Bank of Commerce v. Smith (In re Smith)*, 278 B.R. 532, 537-38 (Bankr. N.D. Okla. 2002) (*citing Cohn,* 54 F.3d at 1117) (hereafter *"Smith"*); *see also Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257, 261 (5th Cir. 1993).

[20] *See, e.g., Guaranty Residential Leasing v. Koep (In re Koep)*, 334 B.R. 364, 373 (Bankr. D. Md. 2005); *Blue Ridge Bank and Trust v. Cascio (In re Cascio)*, 318 B.R. 567, 573–574 (Bankr. D. Kan. 2004); *Citik Ka Wah Bank v. Wong (In re Wong)*, 291 B.R. 266, 275 (Bankr. S.D.N.Y. 2003); *Peoples Thrift Savs. Bank v. Larrieu (In re Larrieu)*, 230 B.R. 256, 265 (Bankr. E.D. Pa. 1999).

reliance test under § 523(a)(2)(B).[21] The issue of whether a creditor has reasonably relied upon a financial statement is a factual determination to be made by the trial court on a case by case basis.[22]

Bailey asks the Court to rely upon those courts which have said that the reasonable reliance requirement under § 523(a)(2)(B) "cannot be said to be a rigorous requirement, but rather is directed at creditors acting in bad faith," relying upon a decision from the United States Bankruptcy Court for the Northern District of Ohio, *Ag Credit, ACA v. Walton (In re Walton)*.[23] The Court notes that this statement in *Walton* is mere *dicta*, as the court in *Walton* denied a creditor's motion for summary judgment premised upon § 523(a)(2)(B). The other case cited by Bailey, *Wickman Machine Tools, Inc. v. Bradford (In re Bradford)*,[24] was decided some thirteen years prior to the decision in *Cohn* and contains little substantive analysis of the reasonable reliance requirement under § 523(a)(2)(B). The Court, having reviewed these more lenient decisions, respectfully declines to follow them.

In the present case, Bailey claims that he relied upon the representation in the June 30, 2002, personal financial statement that Turner's interest in Tulsa Steel was worth $3,480,000. At the time

---

[21] *See, e.g., Guess v. Keim (In re Keim)*, 236 B.R. 400, 403 (8th Cir. BAP 2000); *First Nat'l Bank of Stuttgart v. Owens (In re Owens)*, 322 B.R. 411, 421 (Bankr. E.D. Ark. 2005); *Lease Corp. of America v. Harloff (In re Harloff)*, 272 B.R. 496, 500 (Bankr. M.D. Fla. 2001) ("As concerns the existence of a 'red flag,' '[a] lender cannot claim reasonable reliance on a financial statement that the lender knows is inaccurate or incomplete – particularly where the lender has information in its own files that confirms the inaccuracies or shows the need for further investigation or confrontation with the customer.'") (citing *Fifth Third Bank v. Collier (In re Collier)*, 231 B.R. 618, 624 (Bankr. N.D. Ohio 1999).

[22] *Smith*, 278 B.R. at 538 (*citing In re Morris*, 223 F.3d 548, 553 (7th Cir. 2000)).

[23] 158 B.R. 948, 954 (Bankr. N. D. Ohio 1993) (citation omitted). Other cases which have made similar statements include *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1166 (6th Cir. 1985), and *Northern Trust Co. v. Garman (In re Garman)*, 643 F.2d 1252 (7th Cir. 1980).

[24] 22 B.R. 899 (Bankr. W.D. Okla. 1982).

Bailey reviewed the June 30, 2002, personal financial statement, he was in possession of the most recent financial statement for Tulsa Steel which showed Tulsa Steel to have a negative net worth in excess of three million dollars.[25]  Moreover, Bailey does not dispute that on February 25, 2002, he received the balance sheet for Tulsa Steel dated as of December 31, 2001, which showed that Tulsa Steel had a negative equity position of $3,806,151.12.  The Court concludes that there is no material issue of fact that, as of November 1, 2002, Bailey had information that indicated that Tulsa Steel had a negative net worth (or negative equity) in excess of three million dollars as of June 30, 2002.  The question is whether that knowledge would, in the eyes of an ordinarily prudent person, raise a red flag with respect to the $3,480,000 valuation of Turner's interest in Tulsa Steel in the June 30, 2002, personal financial statement.

Turner was the sole owner of Tulsa Steel.  It is hard to understand how a corporation with such a large negative net worth could have the value ascribed to it in the June 30, 2002, personal financial statement.[26]  It is equally hard to understand how a reasonably prudent individual could ignore the negative equity described in the balance sheets for Tulsa Steel, and rely without question on the value of Tulsa Steel contained in the June 30, 2002, personal financial statement.  Surely the negative net worth set out in the Tulsa Steel balance sheets is a red flag of the kind contemplated

---

[25] Turner unequivocally states that he delivered the June 30, 2002, financial statement of Tulsa Steel to Bailey on August 22, 2002. *See Declaration of Curtis Turner, Exhibit "H" to Defendant's Motion for Summary Judgment*, ¶ 6.  In response, Bailey submitted a portion of his deposition in which he testified that he did not recall whether he received the June 30, 2002, financial statement for Tulsa Steel. *See Deposition of Richard Bailey, Exhibit "F" to Plaintiff's Response to Defendant's Motion for Summary Judgment*, at 24 and 98.  The Court does not find that Bailey's lack of recollection creates a material issue of fact.

[26] It may be that Turner claims that Tulsa Steel was in fact worth that amount as a result of the net income which it was generating.  A determination of the actual value of Tulsa Steel is not necessary for the Court to reach its decision.

by the court in *Cohn*. Without a doubt, it is a red flag within the framework established by this Court in *Smith*. The Court concludes that a reasonably prudent individual in possession of the information contained in the balance sheets of Tulsa Steel and the June 30, 2002, personal financial statement would have been alerted that the valuation of Tulsa Steel contained in the June 30, 2002, personal financial statement was inaccurate, or at a minimum mandated further inquiry. The Court concludes that as a matter of law, to the extent Bailey relied upon the valuation of Turner's interest contained in the June 30, 2002, personal financial statement, such reliance was not reasonable.

In support of his position that his reliance on the June 30, 2002, personal financial statement was reasonable, Bailey cites a decision of the United States Bankruptcy Court for the District of Arkansas.[27] That case is easily distinguishable from the case at bar. In *Webb*, the debtor filled out a single page credit application using false figures. The information was sent by facsimile to the lender, who assumed that the information was true for credit scoring purposes. The court in *Webb* expressly noted that the situation there was "not similar to the situation in which a complex loan agreement made based upon lengthy, but clearly incomplete ***and contradictory financial information***...."[28] In other words, *Webb* did not involve a situation where there were any red flags. In the present case, we have what the Court believes a reasonably prudent person would consider a rather large red flag: the difference in the valuation of Tulsa Steel on its balance sheets and the June 30, 2002, personal financial statement was in excess of seven million dollars. Moreover, the sale of Tulsa Steel by Bailey to Turner may be considered a "complex loan agreement": one need

---

[27] *Agribank, FCB v. Webb (In re Webb)*, 256 B.R. 292 (Bankr. E.D. Ark. 2000) (hereafter *"Webb"*).

[28] *Id.* at 297 (emphasis added) (citation omitted).

only look at the sale documents to reach such a conclusion. It is interesting to note that the court in *Webb* cites with approval the *Cohn* decision, which is relied upon by this and other courts in fashioning a test for reasonable reliance.[29]

Bailey also argues that the test for reasonable reliance under *Cohn* has been met because "[i]t was the standard practice of Bailey to assume that Turner had provided an honest report of the financial status of himself and the company [Turner Steel]."[30] The flaw in this argument is that it converts the test under § 523(a)(2)(B) from an objective test to a subjective test. The issue is not what Bailey's standard practices may have been. It is whether a reasonably prudent person, with information indicating that the valuation of Tulsa Steel contained in the June 30, 2002, personal financial statement was off by more than seven million dollars, would have blindly ignored that information. This Court concludes as a matter of law that, on the basis of the undisputed facts before it, a reasonably prudent person would not have ignored such discrepancies.

## Conclusion

The conclusion that Bailey could not have reasonably relied upon the June 30, 2002, personal financial statement is fatal to his complaint. The Court need consider none of the other elements set forth in § 523(a)(2)(B). Turner's motion for summary judgment is granted. The debt owed by Turner to Bailey is dischargeable. This adversary proceeding shall be dismissed with prejudice.

---

[29] *Id.*

[30] *Plaintiff's Response to Defendant's Motion for Summary Judgment and Brief in Support, Docket No. 17*, at 8.

A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 20th day of December, 2006.

BY THE COURT:

TERRENCE L. MICHAEL
UNITED STATES BANKRUPTCY JUDGE

4753.4